John J. Nelson (SBN 317598)
**MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN PLLC**
280 S. Beverly Drive
Beverly Hills, CA 90212
Tel: (868) 252-0878
jnelson@milberg.com

*Attorneys for Plaintiff and the
Putative Class*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**R.W.,** *a minor by and through their guardian ad litem***, Pamela Hancock,** individually and on behalf of all others similarly situated.

*Plaintiff,*

vs.

**BYTEDANCE, INC.; BYTEDANCE LTD.; TIKTOK LTD.; TIKTOK INC.;TIKTOK PTE. LTD.; and TIKTOK U.S. DATA SECURITY, INC.,**

*Defendants.*

Case No.: 2:25-cv-00948

**CLASS ACTION COMPLAINT**

**JURY TRIAL DEMANDED**

Plaintiff R.W., by and through their guardian ad Litem, Pamela Hancock, ("Plaintiff"), brings this class action against Bytedance Inc., Bytedance Ltd., TikTok Ltd., TikTok Inc., TikTok Pte. Ltd., and TikTok U.S. Data Security, Inc. (collectively "Defendants") in his individual capacity and on behalf of all others similarly situated, and alleges, upon personal knowledge as to his own actions, his counsels' investigation, and upon information and belief as to all other matters as follows:

## NATURE OF THE ACTION

1.      Plaintiff brings this case to address Defendants' unlawful practice of permitting and encouraging Plaintiff and children under the age of 13 to create user accounts on the TikTok app for the purpose of collecting Personally Identifiable Information ("PII"). Defendants have knowingly collected this PII and other intrusive data points without the children's parents' knowledge or consent. Defendants utilize this unlawfully collected PII to provide personally curated content to keep children engaged with TikTok for their own profit. Defendants share Plaintiff and other children's PII with third parties and further curate their For You Pages with copious amounts of curated advertisements. Defendants have been on notice that their actions are unlawful since March 27, 2019[1], when the United States Government issued a permanent injunction and a Civil Penalty against them, which prohibits Defendants from their collection and use of the personal information of children without verifiable parental consent.

2.      Defendants own and control https://www.tiktok.com and the associated TikTok App, ("TikTok") which utilizes a For You Page that operates by collecting PII and other sensitive data points about users to appeal to each specific user and include videos and advertisements curated towards that individual. Defendants' business model and social media platform is particularly attractive to minor children, and they routinely encourage and allow children under the age of 13 to create and use TikTok accounts without their parents' knowledge or consent and continuously fail to

---

[1] TikTok Ltd. and TikTok Inc. were formally Musical.ly and Musical.ly Inc. Musical.ly and Musical.ly Inc entered into a Stipulated Order for Civil Penalties, Permanent Injunction, and other relief in this Court. *United States v. Musical.ly,*
et.al, No. 2:19-cv-01439-ODW-RAO (C.D. Cal. March 27, 2019) (Dkt. No. 10). The order imposed a then record $5.7 million civil penalty for violations of the COPPA Rule, 16 C.F.R. pt. 312, and Section 5 of the FTC Act, 15 U.S.C. § 45; required Defendants to destroy personal information of users under the age of 13; remove accounts of users whose age could not be identified; enjoined Defendants from violating the COPPA Rule; and required Defendants to retain certain records related to compliance with the COPPA Rule and the 2019 Permanent Injunction.

1  comply with parents' requests to delete their children's accounts and personal
2  information.

3      3.    Unbeknownst to Plaintiff, the minor children, and their parents,
4  Defendants were collecting and tracking PII and other sensitive information without
5  providing direct notice or gaining their parents' verifiable consent in violation of the
6  Children's Online Privacy Protection Act of 1998 ("COPPA") and Children's Online
7  Privacy Protection Rule, a federal statute and regulation that protect children's
8  privacy and safety online.

9      4.    Plaintiff and minor children used the TikTok app and website in its
10 intended form as a social media platform, collecting data and PII to curate a For You
11 Page despite being underaged and not receiving proper notice and consent to collect
12 their data. Plaintiff and minor children were also being collected and shared with
13 various third parties to aid Defendants in their marketing and advertising efforts.

14     5.    TikTok is highly marketed to children and as such they are expected to
15 comply with the COPPA rule. At a minimum, COPPA requires that TikTok provide
16 Parental Notice and gain Parental consent before collecting or using Children's PII,
17 especially for their own gain.

18     6.    As noted above, the app Musical.ly (currently TikTok) has been on
19 notice that they are in violation of COPPA since 2019, despite that, they continue to
20 be in violation, just under a new name. In addition to the 2019 lawsuit, in August
21 2024, the Department of Justice filed a new lawsuit against TikTok again for
22 violating COPPA and illegally collecting and using young children's PII.  *See United*
23 *States v. Bytedance, Ltd., et. al*. (Case No. 2:24-cv-06535-ODW-RAO) (C.D. Ca.) (J.
24 Wright).

25     7.    Despite the two lawsuits, and being under scrutiny for violating the
26 COPPA rule, Defendants continue these illegal business practices by failing to get
27 adequate verifiable consent from the minors' parents to collect, utilize, and share their
28 PII and other sensitive personal information.

8.     Young children are simply unable to consent in any capacity to the collection of their PII or understand the risks and repercussions of having that information shared.

9.     Defendants have and continue to breach their statutory and common law obligations to Plaintiff, minor children, and their parents by, inter alia: (i) collecting PII and other sensitive information from Plaintiff and minor children; (ii) failing to design and monitor their app and website to safeguard Plaintiff and minor children from being able to create accounts without verified parental consent; (iii) failing to directly notify parents what information Defendants collect online from their children; (iv)failing to inform parents how Defendants utilize the information they collect; and (v) failing to obtain verifiable consent from parents to collect, use, or disclose their children's PII.

10.     As a result of Defendants' conduct, Plaintiff and Class members have suffered numerous injuries, including: (i) invasion of privacy (ii) diminution of value of Privacy Information, (iii) statutory damages, and (iv) the continued and ongoing risk to their Private Information.

11.     Plaintiff seeks to remedy these harms and brings causes of action for (1) Violation of the California Invasion of Privacy Act, Cal. Penal Code §630, *et seq.*; (2) Violation of the Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq.*; (3) Invasion of Privacy under California's Constitution; (4) Common Law Invasion of Privacy-Intrusion upon Seclusion; and (5) Unjust Enrichment.

## **PARTIES**

### ***Plaintiff***

12.     Plaintiff R.W., is a natural person and at all relevant times, has been a resident of California. R.W. was under the age of 13 during the Class period. R.W.'s parent and legal guardian is Pamela Hancock, who is also a resident of California.

***Defendants***

13.    Defendant TikTok Inc. is a California corporation with its principal place of business at 5800 Bristol Parkway, Suite 100, Culver City, California 90230. TikTok Inc. transacts or has transacted business in this District and throughout the United States.

14.    Defendant TikTok U.S. Data Security Inc. is a Delaware corporation with its principal place of business shared with TikTok Inc. TikTok U.S. Data Security Inc. transacts or has transacted business in this District and throughout the United States.

15.    Defendant ByteDance Ltd. is a Cayman Islands company. It has had offices in the United States and in other countries. ByteDance Ltd. transacts or has transacted business in this District and throughout the United States.

16.    Defendant ByteDance Inc. is a Delaware corporation with its principal place of business at 250 Bryant Street, Mountain View, California, 94041. ByteDance Inc. transacts or has transacted business in this District and throughout the United States.

17.    Defendant TikTok Pte. Ltd. is a Singapore company with its principal place of business at 8 Marina View Level 43 Asia Square Tower 1, Singapore 018960. TikTok Pte. Ltd. transacts or has transacted business in this District and throughout the United States.

18.    Defendant TikTok Ltd. is a Cayman Islands company with its principal place of business in Singapore or Beijing, China. TikTok Ltd. transacts or has transacted business in this District and throughout the United States.

19.    Defendants are a series of interconnected companies that operate the TikTok social media platform. Defendant ByteDance Ltd. is the parent and owner of Defendants ByteDance, Inc. and TikTok Ltd. TikTok Ltd. owns Defendants TikTok LLC and TikTok Pte. Ltd. TikTok LLC in turn owns Defendant TikTok Inc., which, owns Defendant TikTok U.S. Data Security Inc.

20.   Upon information and belief, a group of ByteDance Ltd. and TikTok Inc. executives, including Zhang Yiming, Liang Rubo, Zhao Penyuan, and Zhu Wenjia, direct and control TikTok's core features and development. Since 2019, ByteDance Ltd. and TikTok Inc. have promoted TikTok in the United States, spending hundreds of millions of dollars on advertising, employing U.S.-based staff and executives, and developing and distributing TikTok to run on Apple and Android devices.

21.   ByteDance Inc. and TikTok Inc. have responsibilities for developing, providing, and supporting TikTok in the United States.

22.   TikTok Pte. Ltd. serves as the U.S. distributor of TikTok through the Apple App Store and Google Play Store.

23.   TikTok Ltd. identifies itself as the developer of TikTok in the Apple App Store, and TikTok Pte. Ltd. identifies itself as the developer of TikTok in the Google Play Store. The tiktok.com domain is registered to TikTok Ltd.

24.   Beginning in 2023, TikTok Inc. transferred Personal Information of children to TikTok U.S. Data Security Inc., which has maintained that data without notice to those children's parents or parental consent.

25.   Defendants share officers and directors. For example, TikTok Inc.'s chief executive officers between 2020 and the present (Kevin Mayer, V Pappas, and Shou Zi Chew), have simultaneously held senior positions at ByteDance Ltd., and ByteDance Ltd.'s chief executive officers (Zhang Yiming and Liang Rubo) have simultaneously served as directors of TikTok Ltd. TikTok Inc.'s Global Chief Security Officer, Roland Cloutier, also served as cyber risk and data security support for ByteDance Ltd. ByteDance Inc. and TikTok Pte. Ltd.'s officers and directors have also overlapped with each other, and with officers and directors of TikTok Inc. Defendants intertwine their finances; for example, ByteDance Ltd. provides compensation and benefits to TikTok Inc.'s CEO, and TikTok Inc. employees participate in ByteDance Ltd.'s stock option plan.

26.    Defendants have one centralized bank account for ByteDance Ltd.'s more than a dozen products, including TikTok. Defendants operate on a "shared services" model in which ByteDance Ltd. provides legal, safety, and privacy resources, including personnel. ByteDance's largest shareholder, Zhang Yiming, signed the 2019 consent order with the United States on behalf of Musical.ly, TikTok Ltd.'s predecessor company.

27.    Defendants have operated as a common enterprise while engaging in the unlawful acts and practices alleged below.

## JURISDICTION & VENUE

28.    This Court has general personal jurisdiction over Defendants TikTok, Inc., TikTok Data Security, Inc., and Bytedance, Inc. because their principal places of business are in California.

29.    Additionally, all Defendants are subject to specific personal jurisdiction in this State because a substantial part of the events and conduct giving rise to Plaintiffs' claims occurred in this State.

30.    This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C §1332(d), because the amount in controversy for the Classes exceeds $5,000,000 exclusive of interest and costs, there are more than 100 potential class members, defined below, and minimal diversity exists because the majority of potential class members are citizens of a state different than Defendants.

31.    This Court also has jurisdiction pursuant to 28 U.S.C §1332(d), because the amount in controversy exceeds $75,000 and is between citizens of different states. Venue is proper in this District pursuant to 28 U.S.C. §1391(b), because a substantial portion of the conduct described in this Complaint was carried out in this District.

32.    Furthermore, Defendants TikTok, Inc., and TikTok Data Security, Inc. are headquartered in this District and subject to personal jurisdiction in this District.

## COMMON FACTUAL ALLEGATIONS

### A. Defendants are aware their actions are in violation of COPPA

33.    In February 2019, the United States Department of Justice filed a complaint against TikTok's predecessors, Musical.ly and Musical.ly, Inc., alleging violations of the COPPA Rule and Section 5 of the FTC Act, 15 U.S.C. § 45.

34.    The Department of Justice alleged that TikTok's Musical.ly predecessors had collected and used Personal Information from children younger than 13 in violation of COPPA, including by (1) failing to directly notify parents of the information it collects online from children under 13 and how it uses such information and (2) failing to obtain verifiable parental consent before any collection or use of Personal Information from children under 13. *United States v. Musical.ly, et al.*, No. 2:19-cv-01439-ODW-RAO (C.D. Cal. Feb. 27, 2019) (Dkt. No. 1).

35.    In March 2019, the Honorable Otis D. Wright II entered a Stipulated Order for Civil Penalties, Permanent Injunction, and Other Relief against TikTok's predecessors. *Id.* at Dkt. No. 10 (2019 Permanent Injunction).

36.    As part of the 2019 Permanent Injunction, TikTok's predecessors were enjoined from violating the COPPA Rule, including by (1) "failing to make reasonable efforts, taking into account available technology, to ensure that a parent of a child receives direct notice of Defendants' practices with regard to the collection, use, or disclosure of Personal Information from children" and (2) "failing to obtain verifiable parental consent before any collection, use, or disclosure of Personal Information from children." 2019 Permanent Injunction at 8.

37.    In 2019, Muiscal.ly was renamed TikTok Ltd., and Musical.ly Inc. was renamed TikTok Inc. This renaming did not change the companies' obligations under the 2019 Permanent Injunction.

38.    Despite the 2019 injunction, millions of American Children under the age of 13 continue to create accounts on the TikTok Platform and continuously have their PII collected and used without parental notice or verifiable parental consent.

39.    On June 12, 2020 TikTok Inc. stated to the FTC that "[o]n May 11, 2019…[it] took offline all US accounts that did not go through [its recently imposed] age gate. These accounts…were not accessible to the Company. TikTok did not use or disclose the information for any purpose." TikTok Inc. also stated that it "completed on May 24, 2020" the deletion of children's data as required by the 2019 Permanent Injunction. V Pappas, as "GM of TikTok," certified on TikTok Inc.'s behalf under penalty of perjury that the prior statement was true and correct.

40.    According to the August 2, 2024 DOJ Complaint, after follow-up inquiry by the FTC, TikTok Inc. acknowledged that its June 12, 2020 claims had been false. In fact, TikTok Inc. retained and used data that it previously represented it "did not use," and was "not accessible" to it, and was "delet[ed]." That data included Personal Information and other data of child, teen, and adult users, including IP addresses, device IDs, device models and advertising IDs.

**B. Defendants' TikTok Platform and account creation**

41.    TikTok operates a video-based social media platform that consumers may access via the Internet or through a downloadable software application or "app."

42.    The TikTok platform allows users to create, upload, and share shortform videos. The TikTok app is free to download. It generates revenue for Defendants through advertising and eCommerce, including through the TikTok for Business platform, as well as in-app purchases of through TikTok Shop.

43.    TikTok features a "For You Page" feed in which an algorithm subject to Defendants' control selects videos for each user based on its determination of their interests, pushes those videos to the user, and plays them.

44.    TikTok's algorithms are trained on data collected from users via the TikTok platform and from third-party sources. Such data include videos viewed, "liked," or shared, accounts followed, comments, content created, video captions, sounds, and hashtags, as well as device and account settings such as language preference, country setting, and device type.

45.    TikTok was, at all times throughout the Class Period, aware that minor children accessed and engaged with its platform and actively sought to increase viewing and engagement by children through content directed toward those children, while publicly representing that such minors were not permitted to access TikTok's adult version and were protected by TikTok Kid's version.

46.    Since at least March 2019, Defendants have required that users input a birthdate when creating a TikTok account. This is also known as an age-gate.

47.    Children who self-identify as under the age of 13 in the United States are offered what Defendants refer to as TikTok for Younger Users or "Kids Mode" (hereinafter "Kids Mode").

48.    In Kids Mode, a user can view videos, but cannot upload videos, post information publicly, or message other users.

49.    Parents are neither notified nor asked to consent to the creation of an account in Kids Mode.

50.    If a user indicates that he or she is over the age of 13, that user is permitted to create a regular account on TikTok.

51.    Defendants implemented this "age-gate" in response to the DOJ's 2019 action discussed above. This age-gate is insufficient. First, kids can make multiple attempts at creating an account, if at first after entering their accurate age enacts the limitations of the functionality of the app, kids can go back in and create a new account changing their age to be over 13, and the app does nothing to stop or prevent this, thus Defendants having actual knowledge of the child user's age, Defendants permit the children to create a new account circumventing the age-gate.

52.    Second, kids were allowed to utilize third party login credentials from Instagram or Google, identifying these child user accounts as "age unknown" accounts. This led to the creation of millions of accounts for which Defendants did not know the age of the user.

53.     Regardless of whether a Child uses a regular TikTok account or a Kids Mode account, TikTok violates the COPPA Rule by collecting and using their Personal Information without parental notice and consent.

54.     TikTok's insufficient age verification policies resulted in millions of Children gaining access to regular TikTok accounts and to the adult content and features of a regular TikTok account.

55.     For Children with regular TikTok accounts, TikTok collects Personal Information about them, including first and last name, age, email address, phone number, persistent identifiers for the device(s) used to access TikTok, social media account information, and profile image(s), as well as photographs, videos, and audio files containing the user's image and voice and the metadata associated with such media (such as when, where, and by whom the content was created), usage information, device information, location data, image and audio information, metadata, and data from cookies and similar technologies that track users across different websites and platforms.

56.     For Children with Kids Mode accounts, TikTok still collects Personal Information about them, including several types of persistent identifiers, including IP address and unique device identifiers. TikTok also collects app activity data, device information, mobile carrier information, and app information from Children using Kids Mode accounts—which it combines with persistent identifiers and uses to amass profiles on children.

57.     Defendants' practice of allowing children to sign up for a TikTok account using third party credentials allowed children to create a TikTok account, gaining access to adult content and features of the general TikTok platform without providing age information. Without parental notice or consent, Defendants then collected and maintained vast amounts of personal information from the children who created and used these TikTok accounts.

58.    In 2022, the loophole utilizing third-party credentials was closed when Defendants required all users to go through the TikTok age-gate. Closing this loophole does not fool proof the age-gate strategy.

**C. The Children's online Privacy Protection Act of 1998**

59.    Congress passed COPPA, codified at 15 U.S.C. § 6501, *et seq.,* in 1998 in response to concerns that children's online activities were being tracked by operators of websites and online services. COPPA is intended to "maintain the security of personally identifiable information of children collected online" and to "protect children's privacy by limiting the collection of personal information from children without parental consent."3 The standards in COPPA have given rise to, and correlate with, accepted norms throughout society for defining the expectations of privacy for minor children.

60.    COPPA applies to any operator of a commercial website or online service directed to children under 13 years of age that collects, uses, and/or discloses Personal Information from children. The FTC considers parties with actual knowledge that they are collecting Personal Information from users of a child-directed site or service as "operators" under COPPA.

61.    COPPA "prohibits unfair … acts or practices in connection with the collection, use, and/or disclosure of personal information from and about children on the Internet." 16 C.F.R. § 312.1.

62.    COPPA provides, in pertinent part, that:

> It is unlawful for an operator of a website or online service directed to children, or any operator that has actual knowledge that it is collecting personal information from a child, to collect personal information from a child in a manner that violates the regulations prescribed [by the Federal Trade Commission]. 15 U.S.C. § 6502(a).

63.    COPPA thus prohibits, inter alia, the collection of persistent identifiers for behavioral advertising absent notice and verifiable parental consent. 16 C.F.R. §§ 312.5(c)(7), 312.2.

64.   COPPA specifically requires an "operator" covered by COPPA to give notice to parents and obtain their verifiable consent before collecting children's Personal Information online. 16 C.F.R. §§ 312.4 and 312.5. This includes but is not limited to:

- Posting a privacy policy on its website or online service providing clear, understandable, and complete notice of its information practices, including what information the website operator collects from children online, how it uses such information, its disclosure practices for such information, and other specific disclosures set forth by COPPA;

- Providing clear, understandable, and complete notice of its information practices, including specific disclosures directly to parents; and

- Obtaining verifiable parental consent prior to collecting, using, and/or disclosing Personal Information from children.

65.   The FTC has interpreted "operators of website or online services directed to children" and "operators with actual knowledge that they are collecting personal information online from children under 13" "subject to strict liability for COPPA violations."[2]

66.   Websites or online services that collect Personal Information from users of other child directed websites or online services are deemed as "child-directed" if the website or online service "has actual knowledge that it is collecting personal information directly from users of another Web site or online service directed to children." 16 C.F.R. § 312.2.

---

[2] Statement of Joseph J. Simons & Christine S. Wilson, *Regarding FTC and People of the State of New York v. Google LLC and YouTube, LLC*, FEDERAL TRADE COMMISSION, https://www.ftc.gov/system/files/documents/public_statements/1542922/simons_wilson_google_youtube_statement.pdf (accessed Dec. 21, 2024).

67.    In order to determine whether a website or online service is "directed to children" the FTC will:

> [C]onsider [the website's or online service's] subject matter, visual content, use of animated characters or child-oriented activities and incentives, music or other audio content, age of models, presence of child celebrities or celebrities who appeal to children, language or other characteristics of the Web site or online service, as well as whether advertising promoting or appearing on the Web site or online service is directed to children.

16 FR § 312.2

68.    In 2013, COPPA was enhanced (the "2013 COPPA Enhancement") to provide further protection for children against online tracking and to "giv[e] parents greater control over the online collection of their children's personal information." The 2013 enhancement widened the definition of children's "Personal Information" to include "persistent identifiers" such as cookies that track a child's activity online, geolocation information, photos, videos, and audio recordings.

69.    The 2013 COPPA Enhancement was the culmination of two years of rulemaking by the FTC and reflected society's growing recognition of the surreptitious surveillance tactics used by advertising companies to track children online and advertise to them while using the internet.

70.    By expressly including persistent identifiers and geolocation data in COPPA's definition of Personal Information, the FTC intended to deter advertising companies and internet operators such as Defendants from exploiting young children via tracking, profiling, and advertising online.

71.    Pursuant to Section 1303(c) of COPPA, 15 U.S.C. § 6502(c), and Section 18(d)(3) of the FTC Act, 15 U.S.C. § 57a(d)(3), a violation of COPPA constitutes an unfair … act or practice in or affecting commerce in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

72.     While COPPA does not itself provide a private right of action for individuals to seek redress for harms arising from COPPA violations, and contains a limited preemption clause barring the imposition of liability by states and local governments "inconsistent" with COPPA (15 U.S.C. § 6502(d)), the United States Court of Appeals for the Ninth Circuit has held that "COPPA's preemption clause does not bar state-law causes of action that are parallel to, or proscribe the same conduct forbidden by, COPPA." *Jones v. Google LLC*, 73 F.4th 636 (9th Cir. 2023).

73.     Therefore, individuals harmed by conduct which violates COPPA such as the conduct described herein may seek redress for harms via state law causes of action.

**D. Plaintiff R.W.'s experience**

74.     During the Class Period, Plaintiff R.W. had a TikTok account and was under the age of 13.

75.     In July 2020, Plaintiff R.W. created a TikTok account and was 11 years old at the time.

76.     When R.W. created an account, Defendants did not provide notification from R.W.'s mother and guardian, Pamela Hancock.

77.     Plaintiff R.W.'s mother and guardian did not provide verifiable consent to Defendants prior to them collecting R.W.'s personal information.

78.     Neither R.W. nor their parent and guardian could have reasonably discovered this conduct earlier through investigation as Defendants purported to be abiding by a Permanent Injunction designed to prohibit this conduct throughout the class period.

79.     When R.W. interacted with the TikTok Platform Defendants collected his Personal Information for the purpose of tracking, profiling, and targeting R.W. with curated content and advertisements.

80.     R.W. has a continued interest in protecting his information from Defendants continuous violations of COPPA.

**E. Defendants had actual knowledge that they were collecting, storing, and using the Personal Information of children under the age of 13**

81.     TikTok utilizes internal algorithms to predict user's ages based on their online behavior. However, TikTok refuses to use its age-prediction algorithm to identify children under the age of 13 and stop them from using regular TikTok accounts.

82.     Many accounts that belong to children come to Defendants' attention when one user reports another user's video as violating one of Defendants' policies. Those videos are then added to "video queues" and reviewed by human content moderators who review the videos to determine whether they comply with Defendants' policies. If those content moderators encounter a video that depicts a child under 13, they can apply labels to designate suspected child users, such as "Content Depicting Under the Age of Admission" or "Suspected Underaged User." These moderators can remove a specific video from TikTok, but they lack authority to delete or remove the account even if it is clearly the account of a child. Instead, by applying the labels, they refer the video to the separate content moderation team that assesses whether accounts belong to underage users (the "underage queue").

83.     During the Class Period, however, the process did not work. Accordingly, when Defendants' moderators tagged specific videos as depicting a child under 13, the associated accounts were not actually referred to the team authorized to delete the associated account. Instead, those accounts remained live, and Defendants continued to collect and retain those children's personal information and to show them videos and messages from adult TikTok users. Due to Defendants' recordkeeping deficiencies, they cannot identify the number of accounts affected by this issue. The limited records Defendants do have, however, make clear that millions of accounts were involved.

84.     Defendants conduct quality assurance reviews of the content moderation processes described above. The quality assurance reviews require content moderators

to re-review a subset of previously reviewed accounts or videos. This process aims to identify instances in which TikTok content moderators incorrectly applied company policies to those accounts or videos.

85.    Until at least September 2022, however, when Defendants' quality assurance analysts identified a specific account that a moderator incorrectly failed to flag for deletion as belonging to a child, Defendants did not then go back and delete the account. Instead, the account remained live. Accordingly, Defendants failed to delete numerous children's accounts that their own quality assurance team specifically identified as belonging to children.

86.    Even where accounts satisfied Defendants' rigid criteria, were identified as belonging to children, and were marked for deletion, Defendants failed to delete many of the accounts.

87.    Internal communications reveal that Defendants' employees were aware of this issue. In a September 2021 online chat, for example, employees discussed the fact that accounts were being marked as banned for being underage but were not being deleted and suggested this had been occurring since mid-July 2020. One employee noted that she was seeing this "a lot" and "I run across usually like 3-4 accounts [like that] a day," while another noted "[t]hat shouldn't be happening at all or we can get in trouble … because of COPPA." TikTok knew that many of its account holders were under 13 years of age.

88.    Although Defendants were unquestionably aware of the problem and were under a Court Order to keep records of their COPPA compliance, they failed to do so.

89.    In addition to Defendants' unlawful collection and use of the Personal Information of children under 13, Defendants retain children's Personal Information long after they identify an account as belonging to a child and determine they should delete information related to the account. For example, Defendants retain app activity log data related to children for 18 months.

90.    Defendants have retained children's Personal Information in numerous database locations long after purportedly deleting their accounts. Defendants have not documented what information collected from users is saved in what locations or why, and they have been unable to explain how or why the information was in those locations, or why it was not deleted and failed to delete information children posted to TikTok that was later incorporated into other users' videos, even when Defendants possessed identifiers linking the information to an account that they deleted because it belonged to a child.

91.    Similarly, Defendants retained profile photographs of users that Defendants knew to be children. For example, TikTok allows users to include in their videos another user's comment, which is displayed alongside the commenter's photograph and username. When Defendants did "delete" the account of a child, that child's comments remained in other users' posts, along with their photograph and username. These images had unique identifiers that tied each child's photograph, username, and comment to an account that Defendants knew had been deleted because it belonged to a child. Defendants' internal analyses show that millions of TikTok's U.S. users are children under the age of 13. For example, the number of U.S. TikTok users that Defendants classified as age 14 or younger in 2020 was millions higher than the U.S. Census Bureau's estimate of the total number of 13- and 14-year-olds in the United States, suggesting that many of those users were children younger than 13.

92.    Defendants and their employees have long known that children misrepresent their ages to pass through TikTok's age gate. For example, in 2020, a TikTok moderator recognized that Defendants maintain accounts of children despite the "fact that we know the user is U13," i.e., under age 13, so long as the child's profile does not admit that fact explicitly. Another employee admitted that TikTok moderators were required to ignore any "external information" indicating that a user under review is a child.

93.    Defendants had actual knowledge that children under 13 were using TikTok yet did not obtain verifiable parental consent before collecting the Personal Information of those children in violation of COPPA, the FTC Act, and the consumer protection laws of many states. These acts also constituted an intrusion upon the seclusion of children under 13 as well as a violation of their reasonable expectation of privacy.

### F. Plaintiff's and Class Members' Private Information has financial value

94.    Data harvesting is one of the fastest growing industries in the country, and consumer data is so valuable that it has been described as the "new oil." Conservative estimates suggest that in 2018, Internet companies earned $202 per American user from mining and selling data. That figure is only due to keep increasing; estimates for 2022 are as high as $434 per user, for a total of more than $200 billion industry wide.

95.    Defendants have unlawfully taken possession of and commercially exploited the Personal Information of Plaintiffs and Class members without their permission and without compensating them for the use of their assets.

96.    Defendants' illegal and improper collection, use and retention of children's Personal Information also has given them a significant "first mover" advantage that cannot be undone. TikTok operates one of the most popular apps in the world, and as a result of its unlawful conduct, TikTok's algorithms now incorporate ill-gotten data from millions of children's accounts. The deep insights gleaned from these viewing sessions will enable TikTok to use the Personal Information of children for potentially the duration of their lives, and will solidify TikToks's dominance in the market for child-related content

97.    Defendants' exploitation of Plaintiffs' and Class members' Personal Information, without compensation, has caused Plaintiffs and the members of the Classes to suffer economic loss and injury.

98.    Defendants' exploitation of Plaintiffs' Class members' Personal Information, without compensation, has caused Plaintiffs Class members to suffer ascertainable losses.

## TOLLING

99.    Any applicable statute of limitations has been tolled by the "delayed discovery" rule. Plaintiff did not know (and had no way of knowing) that his PII was intercepted and unlawfully disclosed to third parties, as Defendants purported to be abiding by the terms of a Permanent Injunction prohibiting this conduct.

## CLASS ACTION ALLEGATIONS

100.    Plaintiff brings this action on behalf of himself, through his Guardian Ad Litem Pamela Hancock, and on behalf of all other persons similarly situated ("the Class") pursuant to Rule 23(b)(2), 23(b)(3), and 23(c)(4) of the Federal Rules of Civil Procedure.

101.    The Nationwide Class that Plaintiff seeks to represent is defined as follows:

> All individuals residing in the United States who are, or were, younger than 13 years old when they used TikTok from whom Defendants collected and/or used Personal Information during the Class Period without notifying their parents and obtaining verifiable parental consent beforehand (the "Class").

102.    Excluded from the Class are Defendants, its agents, affiliates, parents, subsidiaries, any entity in which Defendants have a controlling interest, any Defendants' officer or director, any successor or assign, and any Judge who adjudicates this case, including their staff and immediate family.

103.    Plaintiff reserves the right to modify or amend the definition of the proposed class before the Court determines whether certification is appropriate.

104.    Numerosity, Fed R. Civ. P. 23(a)(1). The Class Members are so numerous that joinder of all members is impracticable. Upon information and belief, there are hundreds of thousands of individuals whose PII and PHI may have been

1  improperly disclosed to Facebook, and the Class is identifiable within Defendant's
2  records.

3      105.  <u>Commonality</u>, Fed. R. Civ. P. 23(a)(2) and (b)(3). Questions of law and
4  fact common to the Class exist and predominate over any questions affecting only
5  individual Class Members. These include:

6  - Whether Defendant have or had a practice of collecting Personal
7    Information from children who were younger than 13 years old without
8    notifying their parents and obtaining verifiable parental consent
9    beforehand;

10 - Whether Defendants have or had a practice of using Personal
11   Information from children who were younger than 13 years old without
12   notifying their parents and obtaining verifiable parental consent
13   beforehand;

14 - Whether Defendants' practices violate the Children's Online Privacy
15   Protection Act of 1998 ("COPPA") and the Children's Online Privacy
16   Protection Rule ("COPPA Rule");

17 - Whether Defendants engaged in unlawful business practices;

18 - Whether Defendant engaged in unfair business practices in violation of
19   California's Unfair Competition Law, Cal. Bus. & Prof. Code §17200, et
20   seq;

21 - Whether Defendant has unjustly received and retained monetary benefits
22   from Plaintiff's minor child and Class Members by profiting off the use
23   of their Personal Information; and

24 - Whether Class Members are entitled to damages and/or restitution, and if
25   so, the method of computing damages and/or restitution.

26     106.  <u>Typicality</u>, Fed. R. Civ. P. 23(a)(3). Plaintiff's claims are typical of those
27 of other Class Members because all had their Private Information compromised as a
28

1  result of Defendants actions and collection of PII without parental knowledge and

2  verifiable parental consent.

3      107.  <u>Adequacy</u>, Fed. R. Civ. P. 23(a)(4). Plaintiff will fairly and adequately

4  represent and protect the interests of the Class Members in that Plaintiff has no

5  disabling conflicts of interest that would be antagonistic to those of the other

6  Members of the Class. Plaintiff seeks no relief that is antagonistic or adverse to the

7  Members of the Class and the infringement of the rights and the damages Plaintiff has

8  suffered are typical of other Class Members. Plaintiff has also retained counsel

9  experienced in complex class action litigation, and Plaintiff intends to prosecute this

10  action vigorously.

11      108.  <u>Superiority and Manageability</u>, Fed. R. Civ. P. 23(b)(3). Class litigation

12  is an appropriate method for fair and efficient adjudication of the claims involved.

13  Class action treatment is superior to all other available methods for the fair and

14  efficient adjudication of the controversy alleged herein; it will permit a large number

15  of Class Members to prosecute their common claims in a single forum

16  simultaneously, efficiently, and without the unnecessary duplication of evidence,

17  effort, and expense that hundreds of individual actions would require. Class action

18  treatment will permit the adjudication of relatively modest claims by certain Class

19  Members, who could not individually afford to litigate a complex claim against a

20  large corporation like Defendant. Further, even for those Class Members who could

21  afford to litigate such a claim, it would still be economically impractical and impose a

22  burden on the courts.

23      109.  <u>Policies Generally Applicable to the Class</u>. Fed. R. Civ. P. 23(b)(2). This

24  class action is also appropriate for certification because Defendants have acted or

25  refused to act on grounds generally applicable to the Class, thereby requiring the

26  Court's imposition of uniform relief to ensure compatible standards of conduct

27  toward the Class Members and making final injunctive relief appropriate with respect

28  to the Class as a whole. Defendants' policies challenged herein apply to and affect

Class Members uniformly and Plaintiff's challenge of these policies hinges on Defendants' conduct with respect to the Class as a whole, not on facts or law applicable only to Plaintiff.

110.    The nature of this action and the nature of laws available to Plaintiff and Class Members make the use of the class action device a particularly efficient and appropriate procedure to afford relief to Plaintiff and Class Members for the wrongs alleged because Defendants would necessarily gain an unconscionable advantage since they would be able to exploit and overwhelm the limited resources of each individual Class Member with superior financial and legal resources; the costs of individual suits could unreasonably consume the amounts that would be recovered; proof of a common course of conduct to which Plaintiff was exposed is representative of that experienced by the Class and will establish the right of each Class Member to recover on the cause of action alleged; and individual actions would create a risk of inconsistent results and would be unnecessary and duplicative of this litigation.

111.    The litigation of the claims is manageable. Defendant's uniform conduct, the consistent provisions of the relevant laws, and the ascertainable identities of Class Members demonstrate that there would be no significant manageability problems with prosecuting this lawsuit as a class action.

112.    Adequate notice can be given to Class Members directly using information maintained in Defendants' records.

113.    Unless a class-wide injunction is issued, Defendants may continue collecting PII of Plaintiff and Class Members without parental knowledge or verifiable parental consent disclosing that Private Information of Plaintiff and Class Members, Defendant may continue to refuse to provide proper notification to Class Members regarding the practices complained of herein, and Defendant may continue to act unlawfully as set forth in this Complaint.

114.    Further, Defendants have acted or refused to act on grounds generally applicable to the Class and, accordingly, final injunctive or corresponding declaratory

1  relief with regard to the Class Members as a whole is appropriate under Rule 23(b)(2)
2  of the Federal Rules of Civil Procedure.

3      115.  Issue Certification, Fed. R. Civ. P. 23(c)(4). Likewise, particular issues
4  are appropriate for certification because such claims present only particular, common
5  issues, the resolution of which would advance the disposition of this matter and the
6  parties' interests therein. Such particular issues include, but are not limited to, the
7  following:

8      a.    Whether Defendants owed a legal duty to not collect or disclose
9  Plaintiff's and Class Members' Private Information without parental knowledge or
10  verifiable parental consent;

11     b.    Whether Defendants breached a legal duty to Plaintiff and Class
12  Members to exercise due care in collecting, storing, using, and safeguarding their
13  Private Information;

14     c.    Whether Defendants failed to comply with applicable laws, regulations,
15  and industry standards relating to data security for children under age 13; and

16     d.    Whether Class Members are entitled to actual, consequential, and/or
17  nominal damages, and/or injunctive relief as a result of Defendants' wrongful
18  conduct.

19
20     **COUNT I**
   **Violation of the California Invasion of Privacy Act,**
21   **Cal. Penal Code §630, *et seq.***
   **(on behalf of Plaintiff and the Class)**

22     116.  Plaintiff repeats the allegations contained in the foregoing paragraphs as
23  if fully set forth therein and brings this claim individually and on behalf of the
24  proposed Class.

25     117.  The California Invasion of Privacy Act ("CIPA") is codified at Cal.
26  Penal Code §§630 to 638. The Act begins with its statement of purpose:

27
28

The Legislature thereby declares that advances in science and technology have led to the development of new devices and techniques for the purpose of eavesdropping upon private communications and that the invasion of privacy resulting from the continual and increasing use of such devices and techniques has created a serious threat to the free exercise of personal liberties and cannot be tolerated in a free and civilized society.

118.  California Penal Code § 631(a) provides, in pertinent part:

Any person who, by means of any machine, instrument, or contrivance, or in any other manner ... willfully and without the consent of all parties to the communication, or in any unauthorized manner, reads, or attempts to read, or to learn the contents or meaning of any message, report, or communication while the same is in transit or passing over any wire, line, or cable, or is being sent from, or received at any place within this state; or who uses, or attempts to use, in any manner, or for any purpose, or to communicate in any way, any information so obtained, or who aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the acts or things mentioned above in this section, is punishable by a fine not exceeding two thousand five hundred dollars ($2,500).

119.  Under CIPA, a defendant must show it had the consent of all parties to a communication.

120.  At all relevant times, Defendants did not obtain verifiable consent of the parents or guardians of the Plaintiff and Class Members.

121.  Plaintiff and the Class have reasonable expectations of privacy in the personal affairs of minor children.

122.  Defendants intentionally intruded on and into Plaintiff's and the Class Members' solitude, seclusion, right of privacy, or private affairs by intentionally collecting data from their minor children without the consent of the children or their parents or guardians.

123.    These intrusions are highly offensive to a reasonable person, because they disclosed sensitive and confidential location information, constituting an egregious breach of social norms. This is evidenced by, inter alia, Supreme Court precedent, legislation enacted by Congress and the California legislature, rules promulgated, and enforcement actions undertaken by the FTC, petitions and litigation initiated in the United States and abroad, and Defendants' own statements.

124.    Plaintiff and the Cass were harmed by the intrusion into their private affairs as detailed throughout this Complaint.

125.    Defendants' actions and conduct complained of herein were a substantial factor in causing the harm suffered by Plaintiff and the Class.

126.    As a result of Defendants' actions, Plaintiff and the Class seek damages and punitive damages in an amount to be determined at trial. Plaintiff and the Class seek punitive damages because Defendants' actions—which were malicious, oppressive, and willful—were calculated to injure Plaintiff and the class and were made in conscious disregard of Plaintiff's and the Class Members' rights.

127.    Punitive damages are warranted to deter Defendants from engaging in future misconduct.

## COUNT II
### Violation of the Unfair Competition Law
### Cal. Bus. & Prof. Code § 17200, *et seq.*
### *(on behalf of Plaintiff and the Class)*

128.    Plaintiff repeats the allegations contained in the foregoing paragraphs as if fully set forth therein and brings this claim individually and on behalf of the proposed Class.

129.    Plaintiff and Class members utilized the TikTok Platform while under the age of 13.

130.    At all times mentioned herein, Defendants each engaged in "trade" or "commerce" in California in that they each engaged in the advertising, offering for

1  sale, sale, and distribution of property or any other articles, commodities, or things of

2  value in California.

3      131.  Defendants each engaged in consumer-oriented acts through the

4  offering, promotion, and/or distribution of the TikTok, which significantly impacted

5  the public because TikTok is used nationwide, including in California, and there are

6  millions of users, including Plaintiff and members of the class.

7      132.  Cal. Bus. & Prof. Code § 17200, et seq. (the "UCL") broadly prohibits

8  "unfair competition", which the UCL defines as including "any unlawful, unfair or

9  fraudulent business act or practice and unfair, deceptive, untrue or misleading

10  advertising[.]" California courts have noted that "the differences [between the UCL

11  and FTC Act] are not of a degree to impair comparison" and that unfair acts

12  respectively proscribed in the two statutes "appear practically synonymous." *People*

13  *ex rel. Mosk v. Nat'l Rsch. Co. of Cal.*, 201 Cal. App. 2d 765, 773, 20 Cal. Rptr. 516,

14  521 (Ct. App. 1962). As a result, California courts deem "decisions of the federal

15  court [construing the FTC Act] are more than ordinarily persuasive." *Id*.

16      133.  Defendants violated Cal. Bus. & Prof. Code § 17200, et seq. by engaging

17  in the unfair acts or practices proscribed by Cal. Bus. & Prof. Code § 17200, et seq.

18  outlined herein.

19      134.  The UCL prohibits any "unlawful," "fraudulent," or "unfair" business

20  act or practice and any false or misleading advertising. In the course of conducting

21  business, Defendants committed "unlawful" business practices by, among other

22  things, making the representations and omissions of material facts, as set forth more

23  fully herein, and violating Civil Code §§ 1572, 1573, 1709, 1711, 1770(a)(5), (6), (7),

24  (9), and (16), and Business & Professions Code §§ 17200, et seq., 17500, et seq., and

25  the common law.

26      135.  Plaintiff alleges violations of consumer protection, unfair competition,

27  and truth in advertising laws in California, resulting in harm to consumers.

28  Defendants' acts and omissions also violate and offend the public policy against

engaging in false and misleading advertising, unfair competition, and deceptive conduct towards consumers. This conduct constitutes violations of the UCL's "unfair" prong. There were reasonably available alternatives to further Defendants' legitimate business interests other than the conduct described herein.

136.   As set forth above, Defendants at all times had actual knowledge of their own noncompliance with COPPA and other applicable privacy-related laws. Further, Defendants at all times had actual knowledge of their collection of the Personal Information of Plaintiff and the Class members and the tracking, profiling and targeting of those children for lucrative behavioral advertising.

137.   As set forth above, Defendants intentionally designed TikTok to, among other things, attract minor children by making child-directed content available to them so that TikTok could collect the Personal Information for substantial commercial gain.

138.   Defendants have engaged, and continue to engage, in conduct that is likely to deceive members of the public. This conduct includes failing to disclose that

139.   Defendants were collecting and disseminating the private information of minors without parental notice or consent.

140.   This information is important to consumers, including Plaintiff, because disclosure of PII creates a substantial risk of future identity theft, fraud, or other forms of exploitation.

141.   Defendants were aware at all times that a significant portion of its users were under the age of 13 and nonetheless collected the Personal Information of those children for the purpose of serving those children behavioral advertising for substantial commercial gain. After entering into a Permanent Injunction with the United States in 2019 intended to prohibit Defendants from their continued collection or use of the Personal Information of children under the age of 13, Defendants purposefully sought to undermine their compliance through, among other practices, implementation of a woefully inadequate age-gating system, and monitoring policies

1    and procedures designed to allow them to continue knowingly collecting and using

2    the Personal Information of children.

3        142.   Defendants have engaged in unconscionable, deceptive, or unfair acts or

4    practices, which constitute unfair competition.

5        143.   Defendants systematically collected, used, and/or disclosed Personal

6    Information from children under 13 in violation of COPPA, and therefore the FTC

7    Act, by:

8        • Failing to provide sufficient notice of the information Defendants

9            collected, or the information that was collected on Defendants'

10           behalf, online from children under 13, how Defendants used such

11           information, their disclosure practices, and all other required

12           content, in violation of Section 312.4(d) of COPPA, 16 C.F.R. §

13           312.4(d);

14       • Failing to provide direct notice to parents of the information

15           Defendants collected, or the information that was collected on

16           Defendants' behalf, online from children under 13, how

17           Defendants used such information, their disclosure practices, and

18           all other required content, in violation of Section 312.4(b) and (c)

19           of COPPA, 16 C.F.R. § 312.4(b)-(c);

20       • Failing to obtain verifiable parental consent before any collection

21           or use of Personal Information from children under 13, in

22           violation of Section 312.5 of COPPA, 16 C.F.R. § 312.5; and

23       • Failing to establish and maintain reasonable procedures to protect

24           the confidentiality, security, and integrity of Personal Information

25           collected from children under 13, in violation of Section 312.8 of

26           COPPA, 16 C.F.R. § 312.8.

27       144.   Violations of COPPA and the accompanying FTC regulations "shall be

28   treated as a violation of a rule defining an unfair … act or practice prescribed under

15 U.S.C. § 57a(a)(1)(B)." 15 U.S.C. § 6502(c). These rules define unfair acts or practices in or affecting commerce within the meaning of 15 U.S.C. § 45(a)(1), which is the model for the various consumer protection statutes in the several states, including the Cal. Bus. & Prof. Code § 17200, *et seq*.[3]

145.   Accordingly, Defendants engaged in unfair and unlawful trade acts or practices in violation of Cal. Bus. & Prof. Code § 17200, et seq., which is modeled after, proscribes the same conduct as, and gives deference to the definitions of the FTC Act.

146. Defendants' conduct is unfair, immoral, unethical, oppressive, unscrupulous and substantially injurious to consumers, and there are no greater countervailing benefits to consumers or competition.

147.   Plaintiff and members of the California Subclass could not have reasonably avoided injury because Defendants each took advantage of the lack of knowledge, ability, experience, and/or capacity of consumers—in this case children under 13—to their detriment.

148.   Consumers like Plaintiffs and the California Subclass did not that they were giving their PII to Defendants or that Defendants were failing to safeguard such PII.

149.   Defendants willfully engaged in the unfair and unlawful acts described herein and knew or recklessly disregarded the fact that they violated the Cal. Bus. & Prof. Code § 17200, *et. seq*.

150.   Plaintiff and Class Members were harmed by Defendants' practices described herein, which were a substantial factor and caused injury in fact and actual damages to Plaintiff and Class Members.

---

[3] See 16 C.F.R. § 312.1 (COPPA "prohibits unfair or deceptive acts or practices in connection with the collection, use, and/or disclosure or Personal Information from and about children on the internet.").

151.    As a direct and proximate result of Defendants' unfair and unlawful acts and practices in violation of the Cal. Bus. & Prof. Code § 17200, *et seq*., Plaintiff and Class Members have suffered and will continue to suffer an ascertainable loss of money or property, real or personal, and monetary and nonmonetary damages, as described herein, including, inter alia, the loss of the value and/or diminishment in value of their Personal Information and the loss of the ability to control the use of their Personal Information, which allowed Defendants to profit at the expense of Plaintiff and Class Members. Such an injury is not outweighed by any countervailing benefits to consumers or to competition.

152.    Because Defendants' misconduct is ongoing and continuing, prospective injunctive relief is necessary. Absent injunctive relief, Defendants may continue to collect consumers' PII while failing to adequately safeguard such PII.

153.    As outlined herein, there is tangible value in Plaintiff and Class Member's Personal Information. Plaintiff and Class Members have lost the opportunity to receive value in exchange for their Personal Information.

154.    Defendants' monetization of Plaintiff and Class Member's Personal Information demonstrates that there is a market for their Personal Information.

155.    Plaintiff and Class Members' Personal Information is now in the possession of Defendants, who have used and will use it for their financial gain.

156.    Defendants' retention of Plaintiff and Class Members' Personal Information presents a continuing risk to them as well as the general public. Plaintiff and Class Members seek relief for the injuries they have suffered as a result of Defendants' unfair and unlawful acts and practices, as provided by Cal. Bus. & Prof. Code § 17200, et seq. and applicable law, including all actual damages and attorneys' fees and costs, treble damages, statutory damages, and restitution, as well as an injunction requiring Defendants to each permanently delete, destroy or otherwise sequester the Personal Information collected without parental consent, requiring Defendants to provide a complete audit and accounting of the uses of the Personal

Information by them and any other third parties, and other appropriate injunctive and/or declaratory relief.

157.  Unless restrained and enjoined, Defendants will continue to engage in the above-described conduct. Accordingly, injunctive relief is appropriate.

158.  Plaintiff, on behalf of herself and all others similarly situated, seeks restitution from Defendants of all money obtained from Plaintiff and Class Members collected as a result of unfair competition, an injunction prohibiting Defendants from continuing such practices, corrective advertising, and all other relief this court deems appropriate.

## COUNT III
### Invasion of Privacy under California's Constitution
### *(on behalf of Plaintiff and the Class)*

159.  Plaintiff repeats the allegations contained in the foregoing paragraphs as if fully set forth therein and brings this claim individually and on behalf of the proposed Class.

160.  Plaintiff and Class members have an interest in: (1) precluding the dissemination and/or misuse of their Personal Information of Minor Children; and (2) making personal decisions about how their Personal Information is shared with knowledge and verifiable parental consent as it relates to sharing minor children's personal information.

161.  At all relevant times, Defendants intentionally invaded Plaintiff and Class Members' Privacy rights under the California Constitution by intentionally collecting data from them without the consent of their parents or guardians.

162.  Plaintiff and Class Members had a reasonable expectation that their Personal Information would not be shared without obtaining verifiable parental consent.

163.    Plaint and Class Members did not authorize Defendants to collect and transmit Plaintiff and Class Members' Personal Information alongside their unique identifiers without notifying parents or obtaining verifiable parental consent.

164.    The invasion of privacy is serious in nature, scope, and impact because it relates to children's Personal Information. Moreover, it constitutes an egregious breach of the societal norms underlying the privacy right.

165.    As a result of Defendants' actions, Plaintiff and Class Members have suffered harm and injury, including but not limited to an invasion of their privacy rights.

166.    Plaintiff and Class members have been damaged as a direct and proximate result of Defendants' invasion of their privacy and are entitled to just compensation, including monetary damages.

167.    Plaintiff and Class members seek appropriate relief for that injury, including but not limited to damages that will reasonably compensate Plaintiff and Class members for the harm to their privacy interests because of its intrusions upon Plaintiff's and Class Members' privacy.

168.    Plaintiff and Class Members are also entitled to punitive damages resulting from the malicious, willful, and intentional nature of Defendants' actions, directed at injuring Plaintiff and Class members in conscious disregard of their rights. Such damages are needed to deter Defendants from engaging in such conduct in the future.

169.    Plaintiff also seeks such other relief as the Court may deem just and proper.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## COUNT IV
**Common Law Invasion of Privacy**
**Intrusion upon Seclusion**
***(on behalf of Plaintiff and the Class)***

170.   Plaintiff repeats the allegations contained in the foregoing paragraphs as if fully set forth therein and brings this claim individually and on behalf of the proposed Class.

171.   Plaintiff and Class members had a reasonable expectation of privacy in their Private Information collected and shared by Defendants via the TikTok Platform.

172.   Defendants' disclosure of Plaintiff and Class Members Personal Information to third parties without the knowledge or consent of Plaintiff or their parents or guardians is an intentional intrusion on Plaintiff's and Class members' solitude or seclusion.

173.   Defendants' actions are even more egregious as they were not authorized to collect this information in the first place and have been on notice that collection of Personal Information of minors without obtaining verifiable Parental Consent is a direct violation of COPPA.

174.   Defendant intentionally and with reckless disregard for Plaintiff and Class members' privacy. Obtained, collected, used, and shared Plaintiff and Class Members' personally identifying information, and did so in a manner that would be highly offensive to a reasonable person.

175.   As a result of Defendants' actions, Plaintiff and Class members have suffered harm and injury, including but not limited to an invasion of their privacy rights.

176.   Plaintiff and Class members have been damaged as a direct and proximate result of Defendant's invasion of their privacy and are entitled to just compensation, including monetary damages.

177. Plaintiff and Class members seek appropriate relief for that injury, including but not limited to damages that will reasonably compensate Plaintiff and Class members for the harm to their privacy interest because of its intrusions upon Plaintiff and Class members' privacy.

178. Plaintiff and Class Members are also entitled to punitive damages resulting from the malicious, willful, and intentional nature of Defendants' actions, directed at injuring Plaintiff and Class Members in conscious disregard of their rights. Such damages are needed to deter Defendants from engaging in such conduct in the future.

179. Plaintiff also seeks such other relief as the Court may deem just and proper.

**COUNT V**
**Unjust Enrichment**
***(on behalf of Plaintiff and the Class)***

180. Plaintiff repeats the allegations contained in the foregoing paragraphs as if fully set forth therein and brings this claim individually and on behalf of the proposed Class.

181. Defendants benefit from the use of Plaintiff's and Class Members' Private Information and unjustly retained those benefits at their expense.

182. Plaintiff and Class Members conferred a benefit upon Defendants in the form of Private Information that Defendants collected from Plaintiff and Class Members, without authorization and proper compensation.

183. Defendants consciously disclosed and used this information for its own gain, providing Defendants with economic, intangible, and other benefits, including substantial monetary compensation.

184. The benefits that Defendants derived from Plaintiff and Class Members were not offered by Plaintiff and Class Members gratuitously and rightly belongs to Plaintiff and Class Members. It would be against equity and good conscience for

Defendants to be permitted to retain any of the profit or other benefits wrongly derived from the unfair and unconscionable methods, acts, and trade practices alleged in this Complaint.

185.   Defendants should be compelled to disgorge into a common fund for the benefit of Plaintiff and Class Members all unlawful or inequitable proceeds that Defendants received, and such other relief as the Court may deem just and proper.

### PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff, on behalf of herself and Class members requests judgment against Defendants and that the Court grant the following:

A. Certification of this action as a class action and appointment of Plaintiff and Plaintiff's counsel to represent the Class;

B. A declaratory judgment that Defendant violated: (1) The California Invasion of Privacy Act; (2) the Unfair Competition Law; (3) Plaintiff's and Class members' privacy rights as provided at common law and pursuant to the California Constitution; and (5) Plaintiff and Class Members' other rights under common law;

C. An order enjoining Defendants from engaging in the unlawful practices and illegal acts described therein; and

D. An order awarding Plaintiff and the Class: (1) actual or statutory damages; (2) punitive damages – as warranted – in an amount to be determined at trial; (3) prejudgment interest on all amounts awarded; (4) injunctive relief as the Court may deem proper; (5) reasonable attorneys' fees and expenses and costs of suit; and (6) such other and further relief as the Court may deem appropriate.

### DEMAND FOR JURY TRIAL

Plaintiff, on behalf of herself and the proposed Class, demand a trial by jury for all the claims asserted in this Complaint so triable.

CLASS ACTION COMPLAINT

1  DATED: February 4, 2025

2                                              */s/ John J. Nelson*
3                                              John J. Nelson (SBN 317598)
                                               **MILBERG COLEMAN BRYSON**
4                                              **PHILLIPS GROSSMAN PLLC**
                                               280 S. Beverly Drive
5                                              Beverly Hills, CA 90212
6                                              Tel: (868) 252-0878
7                                              jnelson@milberg.com

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CLASS ACTION COMPLAINT